IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

Case No: 5:08-hc-02160-BO

| | |
|---|---|
| GERALD WAYNE TIMMS, | ) |
| Petitioner, | ) ) ) |
| v. | ) **AMENDED PETITION FOR WRIT OF** |
| | ) ***HABEAS CORPUS*** |
| TRACY JOHNS, Warden, FCI Butner, | ) |
| Respondent. | ) ) ) ) ) ) |

NOW COMES Petitioner, Gerald Wayne Timms, (hereinafter "Mr. Timms," "Gerald Timms," or "Petitioner"), by his undersigned counsel, and represents to the Court that he is illegally detained, in the custody, control, and confinement of the Respondent and her agents and employees of the Federal Correctional Institute-Butner located in Butner, North Carolina, and that his confinement is in violation of the Constitution of the United States. Petitioner seeks relief pursuant to 28 U.S.C. § 2241. Petitioner files this Petition asserting that his continued detention pursuant to the provisions of 18 U.S.C. § 4248 (the "Act") violates the United States Constitution because the Act's enactment is *ultra vires* for the reasons set forth in the order issued by this Court in *United States v. Comstock*, 507 F.Supp.2d 522 (E.D.N.C. 2007) and the affirmance of that order by the United States Court of Appeals for the Fourth Circuit, *United States v. Comstock*, 551 F.3d 274, 280 (4th Cir. 2009), *cert. granted*, 129 S.Ct. 2828, 174 L.E.2d 551 (June 22, 2009); for the additional reasons set forth herein; and because Mr. Timms has, as of the date of this filing, remained in the custody of Respondent for a period of 1 year, 1 month and 28 days beyond his projected release date based solely on a single, unilateral certification by

the United States Bureau of Prisons, without Mr. Timms being afforded an opportunity to hear and challenge the evidence underlying that certification. As a result of these constitutional errors, Mr. Timms is entitled to have the writ of *habeas corpus* issue on his behalf.

## INTRODUCTION, STATEMENT OF FACTS, AND STATEMENT OF PROCEDURAL HISTORY

Petitioner Gerald Timms is entitled to a writ of *habeas corpus* because he is being held pursuant to an unconstitutional act of the United States Congress and because, even if the act of Congress is constitutional on its face, he has in fact been held for nearly 14 months without benefit of any hearing at which to challenge the facts underlying his continued detention.

Mr. Timms pleaded guilty to, and completed his sentence for, violation of 18 U.S.C. §2252A(a)(2). On February 16, 2001, Mr. Timms pleaded guilty to receipt of material, by mail, of child pornography, in violation of 18 U.S.C. §2252A(a)(2). On May 18, 2001, the United States District Court for the Southern District of Florida sentenced Mr. Timms to 100 months of confinement in the custody of the United States Bureau of Prisons.

Allowing for credits against his active sentence, Mr. Timms was scheduled for release on or about November 11, 2008. On October 23, 2008, the United States Bureau of Prisons certified Mr. Timms as a Sexually Dangerous Person pursuant to 18 U.S.C. §4248. The BOP's certification of Mr. Timms was filed in this Court. *See United States v. Timms*, 08-hc-2156-BR (E.D.N.C. October 23, 2008) (the "Commitment Action"). The Commitment Action was held in abeyance by order of the Court dated October 28, 2008.

Following the completion of his sentence, Mr. Timms has remained in the custody of Respondent and is presently confined at the Maryland Unit, Butner Medium I, Butner Federal Correctional Institute, Butner, North Carolina. Mr. Timms seeks his immediate release from such confinement for the reasons set forth herein.

Mr. Timms, proceeding *pro se*, filed on his own behalf that certain "Form to Be Used By a Federal Prisoner in Filing a Petition for Writ of *Habeas Corpus* Pursuant to 28 U.S.C. Section 2241." *See* [Docket Entry No. 1]. A status conference on this matter was held on October 21, 2009. *See* [Docket Entry No. 23]. On October 22, undersigned counsel was appointed to represent Mr. Timms. On December 18, undersigned counsel filed a Status Memorandum. *See* [Docket Entry No. 28]. A second status conference was held on Monday, December 28, 2009. *See* [Docket Entry No. 30]. At the December 28 status conference, the Court afforded counsel for Mr. Timms leave to file on or before January 8, 2010 this Amended Petition for Writ of *Habeas Corpus*.

## STATEMENT OF JURISDICTION

The district court has jurisdiction over Mr. Timms' petition for a writ of *habeas corpus* under 28 U.S.C. § 2241.

## REASON FOR GRANTING THE WRIT

I. 18 U.S.C. 4248 IS UNCONSTITUTIONAL BECAUSE ITS ENACTMENT EXCEEDS THE SCOPE OF CONGRESSIONAL AUTHORITY.

Authority binding on this Court has ruled the Act unconstitutional for lack of Congressional authority. *See United States v. Comstock*, 551 F.3d 274, 280 (4th Cir. 2009), *cert. granted*, 129 S.Ct. 2828, 174 L.E.2d 551 (June 22, 2009) (recognizing that "Supreme Court precedent thus compels the conclusion that §4248 does not constitute a valid exercise by Congress of its Commerce Clause power"). Mr. Timms cites to and incorporates by reference the reasoning, authority, and effect of the Fourth Circuit's opinion in *Comstock* in arguing that Section 4248 is unconstitutional because its enactment exceeds Congressional authority. Furthermore, the absence of an enumerated power granted to the federal government that

underpins Section 4248 prevents any reliance by Respondent on the Necessary and Proper Clause as a basis for the Act's constitutionality. *See Comstock*, 551 F.3d at 280–81 ("The Necessary and Proper Clause simply does not—in and of itself—*create* any Congressional power.") (emphasis in original).

Because the United States Congress lacked the power to enact Section 4248, and because that provision alone is the basis on which Mr. Timms has been detained following the completion of his sentence, Mr. Timms is entitled to immediate release.

II. 18 U.S.C. 4248 IS UNCONSTITUTIONAL BECAUSE IT DEPRIVES MR. TIMMS OF THE PROTECTIONS AFFORDED BY THE *EX POST FACTO* CLAUSE AND THE DOUBLE JEOPARDY PROVISION OF THE UNITED STATES CONSTITUTION.

To keep Mr. Timms detained based largely on the facts of prior offenses, for which he has served his sentences, violates the *ex post facto* clause and the double jeopardy prohibition of the United States Constitution.

In order to avail oneself of those protections, as a threshold matter, the provisions by which an individual is detained must in fact be criminal. *See In re DNA Ex Post Facto Issues*, 561 F.3d 294, 298 (4th Cir. 2009) (recognizing that in order for criminal protections to apply, the challenged statute must be penal in nature). The distinction between civil and criminal proceedings was discussed by the United States Supreme Court in *Kansas v. Hendricks*, 521 U.S. 346, 361, 117 S.Ct. 2072 (1997).

The *Hendricks* Court set forth a two-part test for characterizing a particular statutory scheme as civil or criminal. *See DNA*, 561 F.3d at 298. A reviewing court must first ask whether the legislature intended, as discerned from both the structure and design of the statute along with any espoused legislative intent, to impose a punishment or merely to enact a civil or regulatory law. *Id.* Second, even where the legislature intended to enact a civil or regulatory

law, a law still is criminal if the sanction or disability it imposes is so punitive that the law cannot be viewed as civil in nature. *Id.* In applying the latter prong of the two-part test, a reviewing court must focus on "whether the sanction or disability that the law imposes may rationally be connected to the legislature's non-punitive intent, or rather appears excessive in light of that intent." *Id.* at 298–99.

Here, applying the *Hendricks* Court's two-part test, Section 4248 cannot legitimately be viewed as civil in nature. Congress's choice of language indicates its intent that Section 4248 create the procedures for a civil commitment hearing, but the disability the statute imposes—indefinite confinement following the completion of one's sentence—is so excessive in light of Congress's stated intent merely to limit the likelihood of repeated offenses that it renders Section 4248 penal in nature. *But see United States v. Comstock*, 507 F.Supp.2d 522, 529–30 (holding Section 4248 to be properly construed as a civil scheme).

Section 4248's provision for indefinite confinement is excessive because options exist, short of such a deprivation of liberty, that could serve equally well Congress's stated intent. Procedures exist to allow the Bureau of Prisons and the courts to regulate, control, and monitor the behavior of individuals who have completed their active sentences without subjecting them to indefinite confinement. The use of supervised release, with special conditions, has long been employed by the courts at the request of the United States to control the behavior of recently-released offenders. *See United States v. Pettus*, 303 F.3d 480, 486 (2nd Cir. 2002) (recognizing the virtue of supervised release in protecting "the public from further crimes by easing the re-entry of a convicted defendant into society through the provision of necessary educational or vocational training and other correctional treatment"); *see also United States v. Wilkinson*, 626 F.Supp.2d 184, 193 (D. Mass. 2009) (addressing a similar Section 4248 claim and recognizing

5

the regular use of conditions of supervised release tailored to control the behavior of released sex offenders). These available measures illustrate the excessiveness of Section 4248's provision for continued, indefinite detention.

The statutory scheme set forth at Section 4248 is easily distinguishable from the Kansas statutory scheme that the *Hendricks* Court determined to be civil in nature. Under Kansas's Sexually Violent Predator Act, individuals whom the state sought to detain were entitled to a specific series of procedures that are not present here. 521 U.S. at 352, 117 S.Ct. at 2077. Specifically, when Kansas sought to civilly commit a "presently confined person who ha[d] been convicted of a sexually violent offense and [wa]s scheduled for release," the custodial agency was required to notify the local prosecutor *at least* 60 days before the individual's scheduled release. The local prosecutor then had an additional 45 days to determine whether or not to petition for involuntary commitment. If such a petition was filed, the reviewing state court would immediately hold a hearing to determine if probable cause existed to support a finding of that person to be eligible for civil commitment. If probable cause were found, the inmate would be transferred to a secure facility to submit to a professional evaluation. Upon completion of the professional evaluation, a trial would be held to determine, beyond a reasonable doubt, whether the individual was a sexually violent predator. After that finding beyond a reasonable doubt, the inmate would be transferred from the custody of the Kansas Department of Corrections to the custody of the Kansas Secretary of Social Rehabilitation Services until such time as the person was determined to be safe to be at large. 521 U.S. at 352–53, 117 S.Ct. at 2077. The *Hendricks* Court took special note of Kansas's representation that "an individual confined under the Act is not subject to the more restrictive conditions placed on state prisoners" and the fact that none of the parties to *Hendricks* argued that people institutionalized under Kansas's civil commitment

statute were subject to punitive conditions. 521 U.S. at 363, 117 S.Ct. at 2082. That simply is not the case here.

A Ninth Circuit ruling subsequent to *Hendricks* reinforces the treatment of Section 4248 as criminal. The factors that made the *Hendricks* detention civil were noticeably absent in *Jones v. Blanas*, 393 F.3d 918, 934 (9th Cir. 2004). In that case, the Ninth Circuit recognized that the application of California's sexual predator commitment statute to a particular prisoner subjected him to "precisely the same conditions as criminal inmates," including multiple and repeated strip searches and intimidating tactics, and therefore unconstitutionally "deprived him of the more considerate treatment to which he [was] constitutionally entitled as a civil detainee." 393 F.3d 918, 934 (9th Cir. 2004) (noting that, at minimum, a presumption arises that confinement in conditions identical to those afforded prisoners is punitive) (citing *Youngberg v. Romeo*, 457 U.S. 307, 321–22, 102 S.Ct. 2452, 2461 (1982)).

Here, Mr. Timms and other individuals confined under Section 4248 receive the same punitive treatment afforded federal prisoners. They are held within the confines of a federal correctional institution and can discern no meaningful distinction between their treatment and that of regularly-confined prisoners.[1] Mr. Timms arrived at FCI-Butner Medium I as a prisoner; only his nominal status has changed. While treatment for mental abnormalities is available in some instances, a detainee's prior history of violence may make that detainee ineligible for certain treatment. Further, Mr. Timms submits that his treatment by Respondent as a Section 4248 detainee is substantially identical to his previous treatment while serving a judicially-imposed sentence. This treatment includes, but is not limited to, the use of double bunking, the

---

[1] Respondent could argue that certain disciplinary remedies available to Respondent in managing the custody of prisoners are unavailable in the management of the custody of Section 4248 detainees; however, one posited difference—the inability of Respondent to deduct earned "gain time" from a detainee's sentence of confinement—is an example of circular reasoning. A Section 4248 detainee is ineligible for "gain time" because that detainee is committed pursuant to no definite sentence.

7

recordation and monitoring of telephone calls, restricted recreation, sharing mess privileges with prisoners, identical prison uniforms issued to Section 4248 detainees, being managed by correctional officers employed by Respondent, being forced to submit to strip searches and visual body cavity searches following visitations, and being required to vacate his cell while periodic searches are conducted. In addition, Section 4248 detainees are subject to Bureau of Prison rules and regulations promulgated for the management of prisoners that are punitive in their effect. Mr. Timms himself has lost the use of telephone, commissary, and visitation privileges due to application of such rules and regulations. Section 4248 reads and operates like a penal statute because it is a penal statute, notwithstanding any label Congress may attach. The absence of the myriad procedural safeguards present in *Hendricks*, together with its punitive treatment of Section 4248 detainees—which is nearly identical to the criminal incarceration held unconstitutional in *Jones*—distinguishes Section 4248 from the act at issue in *Hendricks*. Under *Hendricks'* two-part test, Section 4248 detention is criminal in nature.

Because continued, indefinite detention is so punitive in fact, Section 4248 cannot legitimately be viewed as civil in nature. It follows that, because Section 4248 is in fact criminal, Mr. Timms is entitled to every protection and procedure afforded to criminal defendants by the United States Constitution.

    A.    Section 4248 is unconstitutional because it is prohibited as *ex post facto* under Article 1, § 9 of the United States Constitution.

Section 4248 is prohibited as *ex post facto*. A statute is prohibited as *ex post facto* if it "punishes as a crime an act previously committed" or if it "makes more burdensome the punishment for a crime, after its commission." *DNA*, 561 F.3d at 298. To fall within the *ex post facto* prohibition, a law must be retrospective and must disadvantage the offender affected by, *inter alia*, increasing the punishment for the crime. *Lynce v. Mathis*, 519 U.S. 433, 441, 117

S.Ct. 891, 896 (1997). The essential inquiry in *ex post facto* analysis is whether the action complained of has the effect of lengthening the petitioner's period of incarceration. *Id.*

Here, Mr. Timms was convicted of, and received a sentence of 100 months for, violation of 18 U.S.C. §2252A(a)(2). The fact of that conviction forms the basis for Mr. Timms' detention under Section 4248 because, without the conviction under Section 2252A(a)(2), Mr. Timms would not be subject to the operation of Section 4248, i.e., he would not be in the custody of the Bureau of Prisons and thereby reachable under Section 4248. In addition, to the extent a prior criminal act by Mr. Timms, which resulted in a conviction under the laws of the State of Florida, forms the basis for his detention under Section 4248, the after-enacted Section 4248 makes criminal and punishes under federal law acts which previously occurred. *See* Certification of a Sexually Dangerous Person [Docket Entry No. 10-1] (referencing Mr. Timms' conviction for second-degree murder in the State of Florida). Because Section 4248 is a backward-looking provision that modifies and extends confinement solely as a result of acts which predate its enactment, it violates the *ex post facto* clause of the United States Constitution.

  B. Section 4248 is unconstitutional because it subjects individuals to double jeopardy in violation of the Fifth Amendment to the United States Constitution.

Section 4248 violates the Fifth Amendment to the United States Constitution by requiring Mr. Timms to be twice put in jeopardy for offenses for which he has already been convicted and served sentences. The Fifth Amendment to the United States Constitution declares that no person "shall…be subject to be twice put in jeopardy of life or limb [for the same offense]." *Ball v. United States*, 163 U.S. 662, 669, 16 S.Ct. 1192, 1194 (1896); *Baum v. Rushton*, 572 F.3d 198, 206 (4th Cir. 2009). The Supreme Court has interpreted the prohibition to prevent the state from "punishing twice, or attempting a second time to punish criminally, for the same offense." *Kansas v. Hendricks*, 521 U.S. 346, 369, 117 S.Ct. 2072, 2085 (1997).

Here, Mr. Timms is subject to Section 4248 only because he was sentenced to, and served, 100 months of confinement in the custody of the United States Bureau of Prisons. The very operation of Section 4248 against Mr. Timms punishes him again for his prior violation of Section 2252A(a)(2). If he had not committed the violation of Section 2252A(a)(2), he would not again be required to defend himself against the indefinite deprivation of his liberty. At its heart, the operation of Section 4248 punishes Mr. Timms again for the acts that confined him to prison in the first instance.

In addition, Mr. Timms is being punished again for his prior conviction in the State of Florida. Detention under Section 4248 requires proof that Mr. Timms (1) "has engaged or attempted to engage in sexually violent conduct or child molestation," and (2) is "sexually dangerous to others." 18 U.S.C. §4247(a)(6). To establish that Mr. Timms has engaged in sexually violent conduct, the government relies on the fact of Mr. Timms' Florida conviction. Certification [Docket Entry No. 10-1]. Without that prior conviction, Mr. Timms could not be reached by Section 4248 and would have been freed long ago. Indeed, the Florida conviction, which occurred nearly twenty years prior to the enactment of Section 4248, is the *sine qua non* to his continued detention.

### III. 18 U.S.C. 4248 IS UNCONSTITUTIONAL BECAUSE IT DEPRIVES DETAINEES OF THEIR RIGHTS TO DUE PROCESS AND EQUAL PROTECTION.

Section 4248 is deficient under the Fifth Amendment in at least three respects. First, Section 4248 denies a detainee timely notice and an opportunity to be heard following the United States' unilateral decision to certify him as a sexually dangerous person. Second, Section 4248 irrationally distinguishes between individuals confined in the custody of the Bureau of Prisons and individuals outside of such confinement. Finally, Section 4248 deprives its detainees of due

process by allowing their status as sexually dangerous persons to be found by mere clear and convincing evidence.

>  A. Section 4248 deprives individuals of the fundamental requirements of due process, including timely notice, an opportunity to be heard, and meaningful review by a neutral decisionmaker.

Section 4248 violates Fifth Amendment due process because it fails to provide for meaningful review, by a neutral decisionmaker, of the government's unilateral decision to detain. Freedom from physical restraint remains at the core of the liberty protected by the Due Process Clause. *Hendricks*, 521 U.S. at 356, 117 S.Ct. at 2079 (citing *Foucha v. Louisiana,* 504 U.S. 71, 80, 112 S.Ct. 1780, 1785 (1995)). Even if commitment is civil, it entails a significant deprivation of liberty that requires due process. *Addington v. Texas*, 441 U.S. 418, 426, 99 S.Ct. 1804, 1809 (1979). Consequently, involuntary commitment statutes comport with due process only if they employ proper procedures and evidentiary standards. *Hendricks*, 521 U.S. at 357, 117 S.Ct. at 2080. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487 (1985).

Courts must determine the procedures which are necessary to ensure that a citizen is not "deprived of life, liberty, or property, without due process of law," using the test first articulated in *Matthews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893 (1976). The *Matthews* test instructs courts to consider the affected private interest and the government's asserted interest, including the function involved and the burdens the government would face in providing greater process, and the risk of an erroneous deprivation through the procedures used. 424 U.S. at 335, 96 S.Ct. at 893.

11

Case 5:08-hc-02160-BO    Document 32    Filed 01/08/2010    Page 11 of 20

Here, Mr. Timms and other individuals certified pursuant to Section 4248 have been deprived of their liberty indefinitely. To be free from physical detention by one's own government is the most elemental of liberty interests. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 124 S.Ct. 2633, 2647 (2004). On the other side of the scale is the government's interest in reducing incidences of sexual violence. That is also important, but Section 4248 is but one of countless means by which the government works to further that interest. More importantly, Section 4248 creates a monumental risk of wrongful incarceration, while the government's interest would not be significantly burdened by providing greater process.

The procedure at issue here is fundamentally deficient. The government's unilateral certification of a person under Section 4248 stays his release, even after he has completed his sentence. Upon the filing of the certification in United States District Court, Section 4248 requires an evidentiary hearing, but it provides no time period in which the hearing must occur.

In Mr. Timms' case, nearly 15 months have elapsed since his certification under Section 4248, but no evidentiary hearing has occurred. Mr. Timms, and any other individual certified under Section 4248, can be held indefinitely without any requirement that the facts underlying his detention be presented and challenged in a court of law in a timely fashion. As the Supreme Court recognized in *Hamdi*, it is fundamental that persons situated as Mr. Timms be afforded notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Hamdi*, 542 U.S. at 532, 124 S.Ct. at 2649. No such hearing has occurred here, and regardless of the burden on the government in affording such a hearing, that burden most certainly could have been overcome in a time period of less than 15 months. *See United States v. Shields*, 522 F.Supp.2d 317, 334 (2007) (recognizing that the strictures of the Fourth Amendment and the Due Process Clause require the holding of a probable cause hearing promptly following civil

commitment); *see also Ahern v. O'Donnell*, 109 F.3d 809, 815 (1st Cir. 1997) (applying similar reasoning in analyzing a Fourth Amendment claim following the arrest of an individual sought to be civilly committed). Such a deprivation without hearing is prohibited under any reading of the United States Constitution.

Because Section 4248 lacks a procedural safeguard affording individuals certified under Section 4248 with meaningful notice and an opportunity to be heard within a reasonable period of time following certification, Section 4248 is unconstitutional. Because Mr. Timms is being detained pursuant to an unconstitutional statute, the Court should grant his Amended Petition and order his immediate release.

> B. Section 4248 is unconstitutional because it deprives individuals detained by its terms of the equal protection of the laws.

Section 4248 deprives its detainees of the equal protection of the laws, thereby violating the Fifth Amendment to the United States Constitution. Section 4248 runs afoul of equal protection by irrationally discriminating between individuals who are in the custody of the Bureau of Prisons and those who are not.

The central principle of equal protection is that all persons similarly situated should be treated alike. *Monroe v. City of Charlottesville*, 579 F.3d 380, 388 (4th Cir. 2009). The equal protection afforded individuals against action by a state by the Fourteenth Amendment is extended through the Fifth Amendment to proscribe action by the federal government. *Johnson v. Robison*, 415 U.S. 361, 366 n.4, 94 S.Ct. 1160, 1165 (1974) (citing *Richardson v. Belcher*, 404 U.S. 78, 81, 92 S.Ct. 254, 257 (1971)). Differing levels of scrutiny apply depending on the type of classification used. *See City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254 (1985) (recounting the three levels of scrutiny to be employed). Because of the fundamental nature of the liberty interest at stake—physical freedom—classification based

on status of custody should be subjected to strict scrutiny. Thus, Section 4248 should only be sustained if it is suitably tailored to serve a compelling governmental interest. *Id.* However, even if the Court applies rational basis review—and merely requires that Section 4248 be rationally related to a legitimate state interest—Section 4248 cannot pass constitutional muster.

Every individual in the custody of the Bureau of Prisons falls within the reach of Section 4248. The statute reaches a "person who is in the custody of the Bureau of Prisons." 18 U.S.C. §4248(a). Thus, any individual presently incarcerated at a Bureau of Prisons installation anywhere in the country could be certified unilaterally as a sexually dangerous person and detained indefinitely following the expiration of his or her sentence, with limited opportunity for judicial review. If such an individual's case progressed at the glacial speed Mr. Timms has experienced, the individual could remain confined indefinitely with no meaningful forum in which to contest the facts underlying the continued detention. Such risk looms over every individual presently incarcerated by the Bureau of Prisons, regardless of the non-sexual nature of his or her underlying offense.

The facts of Mr. Timms' case illustrate that no rational relationship exists between the means employed by Congress in enacting Section 4248 and its stated purpose of protecting the public from sexually dangerous persons. The significant number of individuals who might be sexually dangerous persons but who are outside of the custody of the Bureau of Prisons are beyond the reach of Section 4248. Congress's distinction—between those inside and outside of federal custody—bears no rational relationship to its desire to shield the public from the dangers of sexual predation. *See Baxstrom v. Herold*, 383 U.S. 107, 110, 86 S.Ct. 760, 762 (1966) (rejecting a New York statute which, for purposes of civil commitment procedures for the mentally insane, treated differently individuals nearing the end of a penal sentence from

individuals who were not incarcerated); *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845 (1972) (rejecting the state's statutory provisions affording individuals facing criminal charges lesser procedural protections prior to civil commitment than those protections afforded individuals not charged with crimes); *Humphrey v. Cady*, 405 U.S. 504, 512, 92 S.Ct. 1048, 1053 (1972) (recognizing that equal protection is implicated where an individual receives different, or lesser procedural protections, based on his status as a sex offender)..

To effectively serve its stated purpose, Congress would necessarily be required to enact a generally-applicable analogue to Section 4248. For the reasons set forth above, it lacks the power to take that broad step. Because the existing statute unconstitutionally discriminates against individuals in federal custody, the more narrow step it has taken is equally barred.

> C. Section 4248 is unconstitutional because it allows individuals to be treated as sexually dangerous persons without proof beyond a reasonable doubt.

The standard of proof employed in a given proceeding evinces the degree of confidence our society wishes to have in the conclusions of the factfinder. *Addington v. Texas*, 441 U.S. 418, 423, 99 S.Ct. 1804, 1808 (1979). The three most common standards are i) beyond a reasonable doubt, ii) by clear and convincing evidence, and iii) by a preponderance of the evidence. Each standard differently allocates the risk of error between the litigants. "Preponderance of the evidence"—being the standard which most evenly apportions the risk of error—is applied by fact finders resolving civil matters between private litigants. Supreme Court jurisprudence teaches that the use of this standard is appropriate where the public lacks a definite interest in the outcome. *Id.* The "beyond a reasonable doubt" standard, being the most exacting standard, is required by our society in criminal matters, where "the interests of the accused are of such magnitude" that they have been protected historically to mitigate the risk of erroneous conviction. *Id.* The "clear and convincing" standard exists somewhere between the two poles.

15

It has been employed, *inter alia*, "to protect particularly important individual interests in various civil cases." *Id.*

The Supreme Court has not addressed what minimum evidentiary standard is required to support the involuntary commitment of a sexually dangerous person. The *Hendricks* Court did not reach the question. However, analogous questions have been discussed in other cases. In *In re Winship*, 397 U.S. 358 (1971), the Court required proof beyond a reasonable doubt to support a juvenile delinquency finding. Conversely, in *Addington*, *supra*, the Court required only clear and convincing evidence to support the hospitalization of an individual found to be mentally ill.

The operation of Section 4248 and its effect on individuals detained pursuant to its terms require that facts be found beyond a reasonable doubt. The Due Process Clause does not mandate a particular standard of proof; instead, the courts inquire as to which standard should be applied given the interests at stake and the concomitant degree of confidence our society should have in the verdict produced. In *In re Winship*, in which the Court recognized a juvenile delinquency proceeding to be quasi-criminal, applying the "beyond a reasonable doubt" standard instilled confidence in the verdict and mitigated the risk of an incorrect verdict. *In re Winship*, 397 U.S. 358, 368, 90 S.Ct. 1068, 1075 (1970). Similarly, in this case, Mr. Timms has been deprived of his liberty indefinitely. Because society so fervently hopes to avoid the risk of wrongful, indefinite confinement, the Due Process Clause requires that the facts supporting confinement to be found beyond a reasonable doubt.

The facts of this case are easily distinguished from *Addington*. That Court's decision turned on the difficulty Texas faced in predicting future behavior and the relative benevolence of the care to be provided upon confinement. *See Addington*, 441 U.S. at 428 n.4, 99 S.Ct. at 1810 (noting that an involuntary mental patient is entitled to treatment, to periodic and recurrent

review of his mental condition, and to release at such time as he no longer presents a danger to himself or others).  The *Addington* Court distinguished *In re Winship*, and recognized that the finding of facts pertaining to past acts—which was required to support a delinquency determination—was easier than predicting future behavior, which was required under the Texas procedures.

Here, individuals certified and detained pursuant to Section 4248 face the gravest of threats to their liberty: indefinite confinement.  They remain *de facto* prisoners in the custody of the Bureau of Prisons.  While some portions of the Adam Walsh Act, of which Section 4248 is a portion, contemplate therapeutic treatment, that treatment has not been provided to Mr. Timms. He and other detainees are, for all intents and purposes, serving indefinite federal criminal sentences.  The Due Process Clause—undergirded by society's interest that we remain robustly confident in factfinding which results in the deprivation of liberty—demands that each prong of the Section 4248 analysis be supported by findings beyond a reasonable doubt.

IV.     18 U.S.C. 4248 IS UNCONSTITUTIONAL AS APPLIED TO MR. TIMMS BECAUSE HE HAS BEEN DEPRIVED OF HIS RIGHT TO DUE PROCESS AFFORDED BY THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Even if Section 4248 is not unconstitutional on its face, its application to Mr. Timms is wholly unconstitutional.  Following his certification under Section 4248, Mr. Timms has been detained for nearly 15 months without the benefit of appearing before a neutral decisionmaker to hear and confront the evidence underlying his continued detention.  The absence of a timely appearance before a neutral decisionmaker undercuts the central meaning of due process. *See Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983 (1972) ("For more than a century, the central meaning of procedural due process has been clear: [p]arties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.  It is

equally fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner."); *Concrete Pipe & Products of Cal., Inc. v. Construction Laborers Pension Trust for Southern Cal.*, 508 U.S. 602, 617, 113 S.Ct. 2264 (1993) ("[D]ue process requires a neutral and detached judge in the first instance.").

Here, regardless of the cause for the denial of Mr. Timms' hearing—whether a judicially-mandated probable cause hearing as employed in *Shields*, *supra*, or the evidentiary hearing required by Section 4248—Mr. Timms continues in the custody of the Bureau of Prisons with no end in sight. Regardless of the resolution of the legal questions at issue in *Comstock* and elsewhere, he has been denied the opportunity to establish that no factual basis exists for his treatment under Section 4248. This unending detention by the Executive, free from judicial review, is the exact transgression for which the writ of *habeas corpus* was created. In this instance, in light of these facts, the writ should be granted and Mr. Timms should be released.

## CONCLUSION

Gerald Timms continues in detention pursuant to a law which has been ruled unconstitutional by this Court and the United States Court of Appeals for the Fourth Circuit. That determination alone justifies his release. In addition, separate, independent reasons exist for the striking down of Section 4248 as unconstitutional. Finally, regardless of the Act's constitutionality, its operation against Mr. Timms—resulting in nearly 15 months of unchecked Executive detention—is unconstitutional. Consequently, this Court should issue the writ of *habeas corpus*.

## **PRAYER FOR RELIEF**

Wherefore, for the foregoing reasons, Petitioner requests that this Honorable Court:

1) Issue a writ of *habeas corpus* to have Mr. Timms brought before the Court to the end that he may be discharged from his unconstitutional confinement and restraint;

2) Order an immediate hearing to determine whether probable cause exists to continue Mr. Timms' detention;

3) If and only if probable cause is found, reserve ruling on the constitutionality of Section 4248 and conduct a full evidentiary hearing on the factual issues under the statute, allowing Mr. Timms to conduct discovery before the hearing; and

4) Grant such other relief as may be appropriate and dispose of the matter as law and justice require.

Respectfully submitted this the 8th day of January, 2010.

/s/ Kearns Davis
Kearns Davis
N.C. State Bar No. 22014

/s/ Andrew T. Tripp
Andrew T. Tripp
N.C. State Bar No. 34254

BROOKS, PIERCE, McLENDON,
  HUMPHREY & LEONARD, L.L.P.
P.O. Box 1800
Raleigh, NC 27602
Telephone: (919) 839-0300
Fax:        (919) 839-0304
kdavis@brookspierce.com
atripp@brookspierce.com
*Attorneys for Petitioner*

# CERTIFICATE OF SERVICE AND FILING

The undersigned hereby certifies that the foregoing Amended Petition for Writ of *Habeas Corpus* was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Michael Bredenburg
Special Assistant U.S. Attorney
Edward D. Gray
Assistant United States Attorney
U. S. Attorney's Office Civil Division
310 New Bern Avenue
Suite 800, Federal Building
Raleigh, NC 27601-1461
michael.bredenburg@usdoj.gov
edward.gray@usdoj.gov

This the 8th day of January, 2010.

/s/ Andrew T. Tripp
Andrew T. Tripp